[Civ. No. 30106. Second Dist., Div. Three. Feb. 7, 1966.]

FRANK C. MORALES, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Frank C. Morales, in pro. per., for Petitioner.

Harold W. Kennedy, County Counsel, and William F. Stewart, Deputy County Counsel, for Respondent.

948

KAUS, J.—Petitioner seeks a writ of certiorari to review an order of the respondent court holding him in contempt. The matters which led to the order under review occurred on November 19, 1965. The only order entered that day which reflects the proceedings is the minute order set forth in the footnote.[1]

After petitioner filed his petition in this court, but before the alternative writ of certiorari was granted, the respondent court entered the following minute order: "It appearing to the Court that through inadvertance the Minute Order of November 19, 1965 does not properly reflect the order of the Court it is ordered, therefore, that the Minute Order of November 19, 1965 in Department 1 be corrected nunc pro tunc to read as follows: The Court finds that counsel for Defendant, Frank C Morales, was excused at 11:10 A.M. and ordered to return at 1:30 P.M. to Department 1. That on the Court's order the Clerk called the case of People vs Frank M. Holman at 1:30 P.M. for assignment and repeatedly called for Frank C Morales in person until 1:55 P.M. No response was received from Frank C Morales and no appearance was made by Frank C Morales until 2:31 P.M. No good cause was shown by Mr. Morales to explain his absence. The Court finds Mr. Morales is deliberately hindering and delaying the orderly process of this court, and therefore, that this conduct constitutes contempt of court, finds Frank C Morales, 'Guilty' of Contempt of Court and sentences him to five days in County Jail, or $250.00 fine. Sentence suspended, 30 days to allow Mr. Morales to pay said fine. On motion of Defendant personally and both counsel trial is continued to November 22, 1965 at 9:00 A.M., Department 1, bail."

What precisely took place in the master calendar department of the respondent court on the day in question does not appear in the record before us except to the extent that it is recited in the order quoted. We have however been furnished with a transcript of the proceedings immediately before the court orally pronounced that it found petitioner in contempt and imposed the punishment. These proceedings started at 2:55 p.m. when the clerk called the criminal matter in which petitioner was appearing for the defense. Both peti-

---

[1] "Defendant personally and on both counsel [sic] motion to continue to November 22, 1965 at 9:00 A.M. Department 1. The Court finds counsel for Defendant, Frank C. Morales, deliberately hindering and delaying the orderly process of this court. Finds him in contempt of court and sentences him to five days or $250.00 fine. Sentence suspended for 30 days to enable counsel to pay said fine.

tioner and the deputy district attorney answered "ready." The court then informed petitioner that the case had been called at 9 a.m. or shortly thereafter and that he was not present.[2] Petitioner said that he had been in Division 75 in San Fernando on a felony preliminary. It further appeared from the court's conversation with petitioner that the criminal matter had been on the calendar of one of the criminal departments on an earlier day and that when the judge presiding there transferred the case to the master calendar department for November 19, 1965, petitioner informed either the judge or the "coordinator" that he had five other matters on his calendar for that day and was told to have someone take care of them. He said he would do the best he could, continued three matters, asked the public defender to appear for him in one matter but was unable to continue the hearing in San Fernando. He went to San Fernando just long enough to reach an agreement with the district attorney to have that matter continued too and proceeded downtown where he appeared at 10 a.m. A law student who works for the district attorney's office was standing in front of the clerk's desk. Petitioner mistook him for one of the attachés of the court and told him that he was ready to go to trial. Apparently there was no court available, so sometime after 11 a.m. somebody excused petitioner and ordered him to return at 1:30.

We pause at this point to note that the record is devoid of any evidence that it was the judge and not one of the various aides to the court who excused petitioner and ordered him to return. Indeed there is nothing in the record to indicate that the court took the bench at any time after the initial calling of the calendar at 9 a.m. and before 2:55 p.m.

After being excused petitioner went to lunch with his client and a witness. At 1:20 p.m. he called the court to ask about the state of the calendar and someone, presumably the clerk, told him that it was "very rough." The same information was given to him by one of the district attorney's law students who was apparently the only person present from the district attorney's office. Petitioner gave his office number to the student, had his lunch and returned to court, apparently a short time after his case had been called.

Code of Civil Procedure, section 1211 reads in part as follows: "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may

---

[2] It is clear from the *nunc pro tunc* minute order that the finding of contempt was not based on petitioner's absence at 9 a.m.

be punished summarily; for which an order must be made, *reciting the facts as occurring in such immediate view and presence,* adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed.'' (Italics added.)

■ It is apparent that the court's order, even as corrected *nunc pro tunc,* does not comply with section 1211 in that it does not contain a recital that the contempt was committed in the immediate view and presence of the court. For that reason alone, the order must be annulled.

■ Furthermore, it seems obvious to us that petitioner's conduct could not be punished as a direct contempt under the circumstances shown.

In *Chula* v. *Superior Court,* 57 Cal.2d 199 [18 Cal.Rptr. 507, 368 P.2d 107] an opinion signed by three justices held that deliberate tardiness was a direct contempt. A concurring opinion by Chief Justice Gibson recognizes that such conduct presents a ''hybrid'' situation, in that all matters relevant to the determination of a contempt happen in court, while such matters as might constitute an excuse happen outside of the courtroom. Chief Justice Gibson felt that in that situation proceeding by way of indirect contempt was not necessary for the protection of the contemner, particularly since in the case under review the court did issue an order to show cause and the attorney was given a full opportunity to a hearing where he could offer evidence. A dissent, written by the present chief justice, argued that the contempt was indirect, but that the statutory procedures for proceeding by affidavit and order to show cause had been complied with. The three dissenting justices based their disagreement with the result on their view that the facts did not show contemptuous conduct. Apparently it was Chief Justice Gibson's opinion which eventually carried the day. In *Arthur* v. *Superior Court,* 62 Cal.2d 404 [42 Cal.Rptr. 441, 398 P.2d 777] the majority rejected the dissent in *Chula,* but while not expressly disavowing the holding of the majority in that case, that wilful tardiness was a direct contempt, it adopted the ''hybrid'' designation. It will be recalled that the former Chief Justice's opinion stressed the fact that where an attorney ordered to appear at a specific time fails to do so and does not offer an excuse ''all matters relevant to the determination of contempt happen in court'' because ''the disruption of judicial proceedings caused by the absence of an attorney occurs in the immediate view and presence of the court.''

If we were to put our stamp of approval on summary proceedings, without affidavit and order to show cause where nothing happens in the immediate view and presence of the court, but the court obviously acts on information obtained from attachés, we would allow the development of a hybrid hybrid and all distinctions between direct and indirect contempt would begin to disappear. The constitutional problems raised by such a procedure cannot be viewed with equanimity. The *Chula* and *Arthur* cases make it clear that as far as the fact of lateness is concerned, no evidence needs to be produced because "the offensive conduct, to wit, the absence, occurs in the presence of the court." (*Arthur* v. *Superior Court, supra,* p. 409.) If the court instead of relying on its own perception, may base its finding of tardiness on reports it receives from clerks, it seems more than arguable that the contemner's right of confrontation has been violated. (*Pointer* v. *Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923].)

Finally, we believe that petitioner's point that he was not adequately apprised of the nature of the proceeding which was being conducted has merit.

In *Arthur* v. *Superior Court, supra,* p. 409, the court says: "Before an attorney may be held in contempt for an absence from the courtroom, he must be notified that he is being cited and given a reasonable opportunity to show why he should be excused." (See also *Inniss* v. *Municipal Court,* 62 Cal.2d 487, 490 [42 Cal.Rptr. 594, 399 P.2d 50].) When the court in the instant case took the bench at 2:55 p.m. it proceeded to question petitioner concerning his whereabouts that day. The court asked him over 30 questions which elicited the information set forth in the first part of this opinion. Twice petitioner was asked whether he had anything further to say, questions which were essentially answered in the negative.[3] At no point was there any mention of the "word" "contempt" until the court orally found petitioner guilty.

We do not think it is too much of a burden on a court in one of these hybrid situations to inform the alleged contemner of exactly what is going on, when he is being offered his opportunity to show why he should be excused. The burglar who is arrested *flagrante delicto* may have a pretty good idea why he is appearing in court a short while later, yet no

---

[3] It seems very probable to us that if at that point petitioner had offered an apology to the court, that would have been the end of the matter. We cannot, however, discount the possibility that had the court informed him that it was holding a contempt hearing, the apology would have been forthcoming.

one would deny him the right of being informed of the charges. (Pen. Code, § 858.) Here, while petitioner can certainly not be heard to say that he was unaware that he had incurred the court's displeasure, he should not be held to have divined that the court was about to hold him in contempt. Had he been so informed he might well have requested permission to call witnesses to bolster his story concerning his whereabouts on the day in question.[4]

The order is annulled.

Shinn, P. J., and Ford, J., concurred.

---

[4]His petition in this court is supported by a declaration which sets forth certain additional facts offered in excuse. It contains facts, not recited in this opinion, which tend to ''button up'' his contention that while at a luncheon he was but a telephone call and a short walk away from the courtroom. It also contains additional facts, which, we suppose, are alleged to support an argument that petitioner could not have hindered or delayed the process of the court, since no attorney admitted to the Bar was ready on the part of the district attorney's office. In view of our disposition of the case we do not discuss this argument. We simply refer to the declaration because it shows that petitioner had a somewhat better case for an excuse than he presented when questioned by the court.