[Crim. No. 13216.   In Bank.   Oct. 3, 1969.]

In re VINCENT HALLINAN on Habeas Corpus.

Garry, Dreyfus, McTernan & Brotsky, Benjamin Dreyfus and Harold McDermid for Petitioner.

Joseph A. Ball, Melvin M. Belli, George E. Bodle, Willie L. Brown, Jr., Grant B. Cooper, LeRoy Hersh, Michael J. Keady, Robert S. Morris, Clinton W. White and A. L. Wirin as Amici Curiae on behalf of Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Respondent.

BURKE, J.—Petitioner Vincent Hallinan, an attorney, seeks annulment of an order of direct contempt issued by the San Francisco Superior Court, sentencing petitioner to five days in jail. ■■■ As hereinafter appears, we have concluded that the facts set forth in the order fail to support the finding of contemptuous behavior, and that the order should be annulled.

The conduct found contemptuous occurred during the jury trial of a defendant represented by petitioner and charged with battery upon a police officer. ■■■ Contempt committed in the immediate view and presence of the court, known as direct contempt, may be treated summarily. All that is required is that an order be made reciting the facts, adjudging the person guilty, and prescribing the punishment. (Code Civ. Proc., § 1211; *In re Ciraolo* (1969) 70 Cal.2d 389, 393-394 [1] [74 Cal.Rptr. 865, 450 P.2d 241]; *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 407 [2] [42 Cal.Rptr. 441, 398 P.2d 777].) In the present case the order recites two instances of conduct deemed contemptuous by the court under the provisions of Code of Civil Procedure section 1209, subdivision 1.[1] The first occurred on December 19, 1968, when petitioner addressed certain language to the court, and the second occurred on December 26, 1968, when petitioner addressed certain language to a witness.[2]

---

[1]Code of Civil Procedure section 1209: ''The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

''1. Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding; . . .

''5. Disobedience of any lawful judgment, order, or process of the court; . . .''

[2]The order adjudging petitioner in contempt reads:

''Whereas, on December 19, 1968, during the trial of the above-entitled action in this Court, in view and presence of the Jury and before the

■ As noted in *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755, 762-763 [8] [278 P.2d 681], this court when it first gave consideration to the subject in *People* v. *Turner* (1850) 1 Cal. 152, 153, carefully pointed out, and it has never been doubted, that the power to adjudicate a direct contempt ''is necessarily of an arbitrary nature, and should be used with great prudence and caution. A judge should bear in mind that he is engaged, not so much in vindicating his own character, as in promoting the respect due to the administration of the laws; and this consideration should induce him to receive as satisfactory any reasonable apology for an offender's conduct.''

When the contempt order is based on statements of an attorney made in open court the language of which is in itself not insolent, contemptuous or disorderly, the cases have held that something more is required to support the order than the mere recital therein that the tone of voice used was con-

undersigned, the Judge of said Court, the following colloquy occurred between the Court and Vincent Hallinan, attorney for the above named defendant:

''MR. HALLINAN [petitioner]: And I move for a mistrial.

''There have been too many comments by this court as to what is—I ask for a mistrial now upon the ground that the Court had no right to state that there was an assault upon Officer Gutierrez.

''THE COURT: Maybe if you'd listen once, Mr. Hallinan,—

''MR. HALLINAN: That is what you said.

''THE COURT: If you listened to what I said, I said 'the alleged assault.'

''MR. HALLINAN: I like to hear it—to have that read back.

''THE COURT: Read it, Mr. Reporter.

'' (Record read by the Reporter: 'THE COURT: It doesn't explain the alleged assault upon Officer Gutierrez. This man wasn't involved with that, Mr.—')

''MR. HALLINAN: I see I am sorry. I apologize on that.

''THE COURT: Your apologies are accepted, Mr. Hallinan.

''MR. HALLINAN: But I do say, if the Court please, that the rulings of the Court have been such that I have contemplated several times asking for a mistrial, and I'm going to do it if they are continued in this fashion.

''THE COURT: Well, Mr. Hallinan, if you are inferring that this Court is siding with anybody here, I cite it as contempt.

''MR. HALLINAN: No, I'm not saying that at all. But I say that the restrictions that have been imposed upon the evidence are unfair to the defendant.

''THE COURT: Well, I cite that as contempt also, Mr. Hallinan.

''MR. HALLINAN: Well, I'm sorry. I did not intend it as such. I have known you for a long time. I have great respect for you.

''THE COURT: Oh.

''MR. HALLINAN: And I'm not saying that you're doing it out of any bad motive. But I do say, your Honor, that the restrictions that have been imposed upon the evidence have been unfair to the defendant. Now, I have to say that. If I don't say it and something goes wrong, where do I get off? What would another court say? It would say that I was obligated to make that objection to that statement.

''THE COURT: I doubt that.

temptuous. Thus in *Gallagher* v. *Municipal Court* (1948) 31 Cal.2d 784 [192 P.2d 905], in annulling an order finding contemptuous conduct alleged to have extended over many pages of court record although not mentioned therein, this court declared that "Broadly speaking, judges are empowered to punish summarily for contempt of court in order to facilitate the orderly administration of justice. Disobedience of court orders tends to lessen the effect of those orders; intemperate behavior in the course of a trial . . . lessens the mastery of the trial judge over the progress of the proceedings and thus tends to obstruct the course of the trial. Considerable summary power, not usually available to the officers of any other branch of the government, is therefore vested in judges. If that power is not wisely exercised it can readily become an instrument of oppression. In a summary contempt proceeding the judge who metes out the punishment is usually the injured party and the prosecutor as well. Since such a situation invites caprice, appellate courts almost without exception require that the order adjudging a person in direct contempt of court recite in detail the facts constituting the alleged transgression rather than the bare conclusions of the trial judge. (Code Civ. Proc., § 1211; see annot., 154 A.L.R. 1227.) This rule in itself demonstrates, if only by implication, that some objective support must be present to support the order of contempt. If a trial judge had only to state that the contemnor raised his voice and twisted his features, no contempt order could be attacked. The well-recognized principle that in a criminal contempt proceeding the accused is afforded many

"Mr. Hallinan: Q. Now, —

"The Clerk: Excuse me, your Honor. Is there any ruling on the motion for mistrial?

"The Court: Oh, the motion for mistrial is denied.

"   .   .   .   .   .   .   .   .

"And again, on December 26, 1968, during the trial of the above entitled action, in the view and presence of the Judge and Jury, said Vincent Hallinan in excusing from the witness stand Pierre Merle, a Deputy District Attorney of the City and County of San Francisco, made the following statement:

"Mr. Hallinan: Q. Uh-huh. That's all. You can crawl down off the witness stand.

"   .   .   .   .   .   .   .   .

"The Court finds that said statements were made in an antagonistic, insulting and disrespectful tone of voice and in the immediate view and presence of the Court; and the Court further finds that said behavior towards the Judge and Witness was disorderly, contemptuous and insolent and that it directly tended to interrupt the due course of the trial and to impair the respect due to the authority of the Court.

"The Court therefore adjudges the said Vincent Hallinan guilty of contempt of the Court and I hereby order him to serve five days in the County Jail."

of the protections provided in regular criminal cases would be rendered meaningless [citations]; and the burden of proof would be sustained by the subjective reactions of the offended judicial officer. . . .

"Another consideration is the fundamental interest of the public in maintaining an independent bar. Attorneys must be given a substantial freedom of expression in representing their clients. 'An advocate is at liberty, when addressing the Court in regular course, to combat and contest strongly any adverse views of the Judge or Judges expressed on the case during its argument, to object to and protest against any course which the Judge may take and which the advocate thinks irregular or deterimental to the interests of his client, and to caution juries against any interference by the Judge with their functions, or with the advocate when addressing them, or against any strong view adverse to his client ex-pressed by the presiding Judge upon the facts of a case before the verdict of the jury thereon. An advocate ought to be allowed freedom and latitude both in speech and in the conduct of his client's case.' [Citations.] The public interest in an independent bar would be subverted if judges were allowed to punish attorneys summarily for contempt on purely subjective reactions to their conduct or statements.

"An attorney has the duty to protect the interests of his client. He has a right to press legitimate argument and to protest an erroneous ruling. . . . [A]n attorney may assert that which he believes to be correct in a forthright manner, if he is acting in the due course of a judicial proceeding. [Citation.]

"We do not mean to suggest by anything said herein, that it is impossible for an attorney to subject a judge to ridicule and insult by intonations and gestures accompanying words wholly innocuous, or that, in such event, the judge is powerless to protect the dignity of the court. We merely recognize . . . that an attorney so skilled in the art of speech and at the same time so lacking in an understanding of his obligations, could be curbed by first warning him of his misconduct, and, if he persisted, by disciplinary action." (Pp. 794-796 of 31 Cal.2d.)

In the present case, as in *Gallagher* v. *Municipal Court, supra,* 31 Cal.2d 784, the record fails to show that the trial court warned petitioner of his "antagonistic, insulting and disrespectful tone of voice" (see fn. 2, *ante*) with respect to either of the two instances of conduct found contemp-

tuous. The only warning with respect to the first such instance was that *if* petitioner, in announcing his objections to certain unspecified rulings of the court and his possible intent to ask for a mistrial, was "inferring that this Court is siding with anybody here, I cite it is contempt." Petitioner immediately disclaimed any such implication, although reiterating his view that restrictions imposed upon the evidence had been unfair to the defendant. When the court thereupon stated, "I cite that as contempt also," petitioner again declared he intended no contempt and had great respect for the judge, but mentioned what he considered his own obligation to defendant to protest rulings he believed unfair. Thus the only warning given by the court was as to the possible intent of petitioner as shown by the words petitioner used, and no mention was made of objection to petitioner's tone of voice or manner. ■ "An attorney is entitled to advocate respectfully and in good faith his contentions on behalf of his client even though asserted inadequacies in the action taken by the court are pointed out." (*Raiden* v. *Superior Court* (1949) 34 Cal.2d 83, 86 [5] [206 P.2d 1081]; see also *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 298-300 [3, 5] [10 Cal.Rptr. 842, 359 P.2d 274]; *Gallagher* v. *Municipal Court, supra,* 31 Cal.2d 784, 788 [1].)

■ With respect to the second instance of conduct found contemptuous, the record likewise fails to disclose any prior warning to petitioner concerning his tone of voice or language used toward the witness. Instead, although not reflected in the order of contempt, the record shows that *after* petitioner addressed the offending, and offensive, remark to witness Merle (fn. 2, *ante*), the court warned peititoner that "One more remark like that, Mr. Hallinan, and you will again be cited for contempt," to which petitioner responded, "I certainly don't mean anything to you, Judge, you understand, or to the dignity of the Court." Although as the court then pointed out, "The witnesses are entitled to some protection as well," petitioner's remark to the witness would not appear to constitute contemptuous or insolent behaviour toward the *judge,* within the meaning of Code of Civil Procedure section 1209, subdivision 1 (fn. 1, *ante*), and there is no finding or showing that petitioner disobeyed any previous court order or warning with respect to his conduct toward witnesses, so as to constitute contempt under subdivision 5 of section 1209 (fn. 1, *ante*). The court quite properly admonished counsel for his offensive remark to the witness, however, and had another

similar incident followed, the court quite properly could have cited counsel for contempt under Code of Civil Procedure section 1209, subdivision 5.

It appears appropriate to once more emphasize as was done in *Gallagher* v. *Municipal Court, supra,* 31 Cal.2d 784, 797, that "The heat of courtroom debate, particularly where liberty is concerned, often gives rise to persistence on the part of counsel. If the words used by counsel are respectful and pertinent to the matter before the court, it is not unnecessarily burdensome to require the judge first to warn the attorney that his tone and facial expressions are offensive and tend to interrupt the due course of the proceeding. Otherwise, attorneys could be subjected to fines and jail sentences because of personal annoyance and pique on the part of trial judges; and these penalties could be rendered unassailable . . . by . . . recitals in the orders of contempt respecting the demeanor of the contemner. There is nothing in the reported decisions or in the experience of our courts that makes necessary such an extraordinary authority on the part of the trial judge. Indeed, the recognition of such an authority would involve the surrender of a substantial amount of the independence of the bar, and in many instances would deprive litigants of a fair hearing." More recently this court again commented that the summary contempt power "must be exercised with great caution, lest it stifle the freedom of thought and speech so necessary to a fair trial under our adversary system. That system is built upon the belief that truth will best be served if defense counsel is given the maximum possible leeway to urge in a respectful but nonetheless determined manner, the questions, objections, or argument he deems necessary to the defendant's case." (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 560 [68 Cal.Rptr. 1, 440 P.2d 65].)

The order adjudging petitioner in contempt is annulled.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.