[Civ. No. 49393. Second Dist., Div. One. Dec. 10, 1976.]

In re ROBERT JAMES SMITH on Habeas Corpus.

**COUNSEL**

Robert James Smith, in pro. per., for Petitioner.

No appearance for Respondent.

**OPINION**

**LILLIE, J.**—In this proceeding in habeas corpus, petitioner Robert James Smith, an attorney, seeks to annul orders of the Ventura County Superior Court dated August 10 and August 19, 1976, adjudging him in contempt of court on four counts, and on one count sentencing him to jail for one and one-half hours and imposing a $500 fine, and imposing a fine of $500 on each of the three other counts.[1]

The incidents resulting in these orders occurred in open court during the trial of a civil action entitled Herbert Charles Frame v. City of Simi Valley, et al., No. 55640, in which petitioner represented plaintiff. In the course of the trial petitioner called Herbert Fairfield, a licensed engineer, as an expert witness to testify relative to various matters including the normal walking speed of adult humans. Several questions were propounded of Fairfield, then outside of the presence of the jury and in open court, the trial judge heard oral argument on a relevancy objection to questions relating to studies Fairfield said he conducted which established the normal walking speed of three miles per hour of adult humans, and to whether he could estimate the velocity from a demonstration. Prior thereto, and in connection with other objections, the judge several times commented that no foundation had been laid for Fairfield's qualifications; again, during the argument, he several times more remarked about the lack of foundation as to Fairfield's expertise, and indicated that there was no evidence in the record to establish the

---

[1]Fines of $500 on these three were permanently stayed.

foundation for the expert in the area of normal walking speeds of humans. He sustained the relevancy objection commenting "there are too many unknown factors for the evidence to be reliable, even assuming that your expert is qualified in this area. . . . anything that you've stated is within the common experience. . . . We don't need an expert for that," stating he was "not interested" in a demonstration and concluding that he did not "care to hear any more on it." Up to this point petitioner had not asked to make an offer of proof nor had he been given the opportunity to do so. Thus, for the record, he then sought to make an offer of proof of Fairfield's qualifications in the area of normal walking speeds by having him state his expertise, whereupon the trial judge in rapid succession and in the following manner found petitioner to be in contempt of court four times.

"MR. SMITH: There is one other point I wanted to bring up your Honor, and that's on the qualifications of Mr. Fairfield on the subject matter of normal speeds.

"THE COURT: I have made my record, Mr. Smith. If you raise it one more time as far as I'm concerned you are in contempt of court.

"MR. SMITH: I'm only asking the Court for permission to have Mr. Fairfield state for the Court what is his expertise in that area.

"THE COURT: I find you in contempt of Court for refusing to accept this Court's ruling. I'm going to continue the matter until this trial is terminated. Now call the jurors back in, please.

"MR. SMITH: I have to make an offer.

"THE COURT: I find you in contempt again.

"MR. SMITH: Once, twice, it might be a dozen, but—

"THE COURT: Take him to jail Ted. I find him in contempt for refusing to accept the ruling of this Court. We'll take a recess to 1:30 p.m. At that time if he thinks he can abide by the ruling of the Court—

"MR. SMITH: I have to ask that I make my offer—

"THE COURT: I further find you in contempt a third time and assess a fine of $500.

"MR. SMITH: Judge, you can do just about what you want.

"THE COURT: Fourth time, another $500. Take him to jail, Ted. Court's in recess until 1:30. By that time if he thinks he can abide—

"MR. SMITH: We could abide by the Court's ruling right now.

"THE COURT: You are already in contempt, and I put you in custody for an hour and a half for the first contempt, and I have assessed various fines against you in addition to that.

"MR. SMITH: I know, but can you give me a stay of execution on those matters, your Honor, so we can proceed with the trial?

"THE COURT: 1:30 p.m. Court's in recess until 1:30. Notify the jury."

The foregoing occurred on August 10, 1976, at 10:55 a.m.; 15 minutes later, at 11:10 a.m., the court reconvened in the absence of the jury and announced: "I have reflected upon the Court's orders, and I don't have any intention of changing my order. However, I don't think it's fair to the other parties involved to disrupt this trial, and I'm sure nobody present wants a mistrial in this case. [¶] I'm inclined to defer and stay any order I made until the termination of this trial and go ahead with and proceed with the jury and try to get it over with."

The minute order of August 10, 1976, in pertinent part reads: "At 10:55 A.M. all parties present as heretofore; the jury and alternate juror are not present. . . . [¶] Motion of counsel for plaintiff for permission to have witness, Herbert Fairfield, state his qualifications is, by the court denied, and the court finds counsel for plaintiff in contempt of court for two counts, sentences him to Ventura County Jail for one and one-half hours, terminating at 1:30 PM this date; again finds counsel for plaintiff in contempt of court for two additional counts and assesses fines of $500.00 as to each count. The bailiff is directed to accompany counsel for plaintiff to jail. [¶] Court directs a recess. [¶] At 11:10 A.M. all parties present as heretofore with the exception of plaintiff, Herbert C. Frame; the jurors are not present. The court stays the court's order for imposition for jail time and fines until termination of trial; counsel for plaintiff accepts the ruling and, upon request of counsel for plaintiff, the court orders that a transcript of the contempt matter be prepared at the court's expense."

The trial continued, and on August 13, 1976, a jury verdict was returned after which the judge advised petitioner that a transcript of the proceedings re contempt had been ordered, and the matter deferred to the end of trial, then inquired "if there is any reason why counsel should not be held in contempt." At the request of petitioner the cause was continued to August 19, 1976, "for further proceedings, and as to whether or not the court should, or should not impose sanctions."

On August 17, 1976, petitioner filed with this court petition for writ of certiorari/habeas corpus/prohibition/mandamus/stay; on August 18, 1976, we denied said petition as premature.

On August 19, 1976, the trial court called the contempt matter "for further proceedings, either for his opportunity to show the Court good cause why it should not proceed, or in the alternative to impose sentence for the contempt." There followed a rather lengthy colloquy on the merits, petitioner advising the court that he was obliged and merely trying to make an offer of proof of Fairfield's qualifications for the record to protect the rights of his client on appeal, "otherwise the exclusionary rule on the evidence would not have been grounds for error," and that he did not speak to the court in a disrespectful manner and did not intend to have it think he was contemptuous toward it; and the judge insisting that petitioner had refused to accept his ruling. The judge concluded: "This Court did order and find you in contempt and ordered that you remain in custody for an hour and a half as to the first contempt, and fined you on various other contempts. [¶] On review of the record I find at this time that I don't have any alternative to impose greater punishment than the hour and a half. My intention at that time was solely to permit the trial to continue, and had I not made that order I certainly at this time would have increased it. I don't think I can. [¶] I do find you are in contempt of Court. . . . I do order that you spend one and a half hours in custody as to the first contempt that you committed against this Court, and you are remanded to the custody of the sheriff by the bailiff to see that that sentence is imposed. [¶] As to the others, I think a total of a $500 fine is sufficient, and it is ordered that you pay a fine in the amount of $500."

The minute order of August 19, 1976, reads as follows: "HEARING RE CONTEMPT. [¶] This being the time heretofore set for hearing of contempt proceedings; Robert J. Smith is present. [¶] Counsel makes statement to the court. [¶] Court finds counsel in contempt and orders that he spend

one and one-half hours in jail and pay fine of $500.00 payable to the County Clerk; that matter is stayed to August 30, 1976 when counsel shall report directly to the Ventura County Sheriff; that fine of $500.00 is also payable on that date; that fines as to other counts of contempt are permanently stayed. [¶] Counsel's request for copy of minute order and reporter's transcript is granted."

■ Preliminarily we note that petitioner sought a writ of certiorari or in the alternative a writ of habeas corpus. Either remedy is proper. (*In re Buckley,* 10 Cal.3d 237, 259 [110 Cal.Rptr. 121, 514 P.2d 1201].) We chose to treat the petition as one praying for a writ of habeas corpus and issued an order to show cause. Respondent has filed no return and no opposition to issuance of the writ.

Petitioner's challenge to the validity of the August 10 and 19, 1976, orders is to the merits and the trial court's motive in making them. He argues that he respectfully pressed on the court a contention vital to his client, he had a right to make an offer of proof for the record, the trial court misused its power,[2] and the order he is charged with failing to obey is ambiguous.

Although both contempt orders are totally devoid of any showing on their face of facts constituting legal contempts or where they occurred, we have resorted to the record, not for the purpose of supplying the missing jurisdictional facts which we are not permitted to do (*Raiden* v. *Superior Court,* 34 Cal.2d 83, 86 [206 P.2d 1081]) but to place the orders in their proper perspective.

According to the trial judge, the reason for the *first* contempt finding appears to be "for refusing to accept the Court's ruling," whatever that might be; as far as we can determine, the *second* contempt finding seems to be based on petitioner's third attempt to make his offer of proof; petitioner uttered the words "Once, twice, it might be a dozen, but—" and, interrupting, the judge a *third* time found "him in contempt for refusing to accept the ruling of this court"; the *fourth* contempt finding followed petitioner's statement, "Judge, you can do just about what you want."

---

[2]Petitioner asserts that the contempt orders are in retaliation of a suit he had filed on behalf of his son against the Ventura County Superior Court for violation of the latter's civil rights now pending in the federal court.

■ Although the record fails to show disobedience of a "clear and direct order" (*Thorne* v. *Municipal Court*, 237 Cal.App.2d 249, 252 [46 Cal.Rptr. 749]; § 1209, subd. 5, Code Civ. Proc.), or any statement of petitioner contemptuous on its face or statement or act which disrupted or obstructed the judicial process, or any unusual tone of voice or gesture or word of disrespect for the court or any boisterous or menacing conduct or insolent behavior on the part of petitioner, but rather reflects that he earnestly and respectfully, although persistently, sought to safeguard the interests of his client on appeal by asking permission to make an offer of proof, we do not reach any issue relating to whether there is substantial evidence in the record to support the recitals in the orders (*In re Buckley*, 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201]) because no such recitals exist in either order. Thus our disposition of this matter is based solely upon the court's noncompliance with the requirements of section 1211 of the Code of Civil Procedure, rendering the orders and each of them invalid.

Section 1211, Code of Civil Procedure provides in pertinent part: "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed."

"This [§ 1211] is jurisdictional, and an order which assumes to punish summarily a direct contempt of court is void unless it shows on its face facts sufficient to constitute a legal contempt. (*Raiden* v. *Superior Court*, 34 Cal.2d 83, 86 [206 P.2d 1081]; *In re Wells*, 29 Cal.2d 200, 201 [173 P.2d 811]; *Ex parte Hoar*, 146 Cal. 132, 133 [79 P. 853].)" (*Vaughn* v. *Municipal Court*, 252 Cal.App.2d 348, 357 [60 Cal.Rptr. 575].) Proceedings to punish for contempt must be taken as prescribed by statute. "They are *stricti juris.*" (*Lapique* v. *Superior Court*, 68 Cal.App. 407, 411 [229 P. 1010].)

Herein the only orders adjudicating petitioner in contempt of court and imposing punishment therefor are the two minute orders of August 10 and 19. Although minute orders comply with the requirement that a written "order must be made adjudging that the party proceeded against is guilty of a contempt and that he be punished accordingly." (*In re Rosen*, 31 Cal.App.3d 71, 72 [106 Cal.Rptr. 757]; see also *Morales* v.

*Superior Court,* 239 Cal.App.2d 947, 948 [49 Cal.Rptr. 173]), such orders must satisfy the other provisions of section 1211, and it is readily apparent that neither minute order complies in any respect with those requirements. First, neither order contains a recital that the contempt was "commited in the immediate view and the presence of the court." (§ 1211, Code Civ. Proc.) For that reason alone the order must be annulled. (*In re Rosen,* 31 Cal.App.3d 71, 74 [106 Cal.Rptr. 757]; *Morales* v. *Superior Court,* 239 Cal.App.2d 947, 950 [49 Cal.Rptr. 173].) Second, neither order recites "the facts" (§ 1211, Code Civ. Proc.) showing the acts or conduct which constitute a contempt. "The requirements of the order adjudicating contempt have been given expression in numerous opinions. In *Arthur* v. *Superior Court, supra,* 62 Cal.2d at page 407 [42 Cal.Rptr. 441, 398 P.2d 777], we observed: 'Section 1211 of the Code of Civil Procedure establishes the procedure that is to be followed in adjudging persons in contempt of court. Contempt committed in the immediate view and presence of the court, known as direct contempt, may be treated summarily. All that is required is that an order be made reciting the facts, adjudging the person guilty and prescribing the punishment.' We have emphasized, however, that such an order is valid only if it recites facts with sufficient particularity to demonstrate on its face that petitioner's conduct constituted a legal contempt. (*Chula* v. *Superior Court, supra,* 57 Cal.2d at p. 203 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421]; *Raiden* v. *Superior Court* (1949) 34 Cal.2d 83, 86 [206 P.2d 1081]; *Gallagher* v. *Municipal Court* (1948) 31 Cal.2d 784, 795 [192 P.2d 905].)" (*In re Buckley,* 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201]; *In re Carrow,* 40 Cal.App.3d 924, 928 [115 Cal.Rptr. 601].)

The minute orders of August 10, 1976, and August 19, 1976, adjudging petitioner guilty of contempt of court on four counts and imposing punishment therefor are, and each of said orders is, void and hereby annulled.

Wood, P. J., and Hanson, J., concurred.