[No. S080174. June 8, 2000.]

STEPHEN BOYSAW, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

**COUNSEL**

Michael P. Judge, Public Defender, John Hamilton Scott, Deputy Public Defender, and Stephen Boysaw, Deputy Public Defender, in pro. per., for Petitioner.

Lloyd W. Pellman, County Counsel, and Gordon W. Trask, Principal Deputy County Counsel, for Respondent.

**OPINION**

**BROWN, J.**—Petitioner seeks a writ of certiorari to review an order adjudging him in direct contempt of court. According to the order, the allegedly contemptuous conduct consisted in "yelling at the judge in front of the jury in a loud, rude, hostile and disrespectful *tone of voice*." (Italics added.) Petitioner contends the order must be annulled for two reasons: (1) It is defective under Code of Civil Procedure section 1211, subdivision (a),[1] insofar as it fails to recite in so many words that the cited behavior occurred in the "immediate view and presence" of the court, and (2) it fails to recite that petitioner was properly warned that his tone of voice was objectionable. We reject the first contention. What section 1211 requires is not the incantation of a magic formula, but rather the recitation of facts making it clear, as did the order here, that the allegedly contemptuous conduct did in fact occur in the immediate view and presence of the court. Petitioner's second contention, however, has merit. The order adjudging him in contempt must be annulled for failure to reference an appropriate warning.

---

[1] All statutory references are to the Code of Civil Procedure.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, a deputy public defender, was cross-examining a police officer, and the prosecutor objected, occasioning the following exchange between the court and petitioner:

"The Court: You have to give him time to answer. [¶] And you'll have to address the witness in a professional tone of voice.

"Mr. Boysaw: I'm being professional, your honor.

"The Court: I'm asking you to address the witness in a professional tone of voice."

Shortly thereafter, in objecting to another of petitioner's questions to the officer, the prosecutor commented, "I don't believe this tone of voice is called for." Petitioner replied, "I don't believe counsel has a right to tell me what tone of voice to use." "No, but the court does," the judge observed.

Moments later, after the court sustained objections to his questions of the officer, petitioner continued to argue his point.

"Mr. Boysaw: Your honor, [the officer] said [the defendant] was not cooperative. [¶] I think this goes to that.

"The Court: I have sustained the objection.

"Mr. Boysaw: I believe it goes to his—

"The Court: Don't argue, Mr. Boysaw.

"Mr. Boysaw: I am arguing. [¶] He says she wasn't cooperative. This is evidence she was."

The court excused the jury and called a recess, during which the following colloquy ensued:

"The Court: Mr. Boysaw, you do not argue with the court in front of the jury and you do not yell at the court in front of the jury. [¶] This is not appropriate behavior—

"Mr. Boysaw: But—

"The Court: And don't interrupt me while I'm making a record. [¶] I'm issuing an order to show cause why you should not be held in contempt. [¶]

I think that was totally inappropriate behavior. [¶] You do not stand at the podium and yell at me in front of the jury. That is contempt of court. [¶] We will have a hearing on the matter and I will give you a chance to be heard if you wish, but— don't keep interrupting me when I'm making a record. [¶] And you don't act like that in—You particularly don't act like that in front of a jury. That is unprofessional and inappropriate behavior.

"Mr. Boysaw: Your honor, I believe I'm entitled to be honest with my feelings. [¶] If you are offended by it, that's one thing. [¶] But I believe I asked an honest question and the court decided that it's not an appropriate question and I have a right to object.

"The Court: You do not have a right to object in front of the jury and you don't have a right to yell at me that you disagree with my ruling in front of the jury. [¶] You do not have a right to tell me whatever your feelings are in the middle of a jury trial in front of the jury. That is unprofessional behavior and it's really not—It's not relevant whether I'm personally offended. [¶] It undermines the court in front of the jury and that's why it's unprofessional. [¶] We'll set a hearing date at the end of this trial, but I'm issuing an order—and I'll put it in writing—to show cause why you should not be held in contempt because that was about as extreme an example of unprofessional behavior as I've seen in my 12 years on the bench."

The order of contempt subsequently issued by the court reads in pertinent part as follows: "Deputy Public Defender Stephen Boysaw represented the defendant at trial in this matter. On the afternoon of April 12, 1999, Mr. Boysaw was cross-examining a witness, LAPD Officer Ramon Martinez. The court sustained an objection made by the prosecutor to one of Mr. Boysaw's questions. Mr. Boysaw argued briefly, in front of the jury, that the objection should not have been sustained. The Court again stated, 'The objection is sustained.' [¶] Mr. Boysaw then began loudly yelling at the court in an extremely rude, hostile and disrespectful tone of voice."

After the Court of Appeal summarily denied a petition for writ of certiorari, we issued a writ of review.

SECTION 1211 AND "IMMEDIATE VIEW AND PRESENCE"

██ "The requirements of the order adjudicating contempt have been given expression in numerous opinions. In *Arthur* v. *Superior Court* [(1965)] 62 Cal.2d [404,] 407 [42 Cal.Rptr. 441, 398 P.2d 777], we observed: 'Section 1211 of the Code of Civil Procedure establishes the procedure that is to be followed in adjudging persons in contempt of court. Contempt

committed in the immediate view and presence of the court, known as direct contempt, may be treated summarily. All that is required is that an order be made reciting the facts, adjudging the person guilty and prescribing the punishment.' We have emphasized, however, that such an order is valid only if it recites facts with sufficient particularity to demonstrate on its face that petitioner's conduct constituted a legal contempt. [Citations.]" (*In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.2d 248].)

Section 1211, subdivision (a) provides in pertinent part: "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, *reciting the facts as occurring in such immediate view and presence*, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed." (Italics added.)

■ Petitioner contends a contempt order which fails to recite in so many words that the contemptuous conduct occurred "in the immediate view and presence of the court" is invalid under section 1211, even if the underlying facts recited in the order make that quite clear. We have never insisted upon such empty formalism. To the contrary, in measuring an order of contempt against the requirements of section 1211, we emphasized that "[t]he recital-of-facts requirement is not met by a mere statement of the trial judge's conclusions regarding the nature of the conduct giving rise to the contempt." (*In re Littlefield* (1993) 5 Cal.4th 122, 138 [19 Cal.Rptr.2d 248, 851 P.2d 42].) The order here recited that petitioner "yell[ed] at the judge in front of the jury in a loud, rude, hostile and disrespectful tone of voice," thereby making it clear beyond any cavil that the cited conduct did in fact occur in the immediate view and presence of the court. To hold the order invalid on the first ground assigned by petitioner would be to exalt form over substance.

The seminal case in the line of Court of Appeal opinions upon which petitioner relies is *Morales v. Superior Court* (1966) 239 Cal.App.2d 947 [49 Cal.Rptr. 173]. "It is apparent that the court's order, even as corrected *nunc pro tunc*, does not comply with section 1211 in that it does not contain a recital that the contempt was committed in the immediate view and presence of the court. For that reason alone, the order must be annulled." (239 Cal.App.2d at p. 950.) The Court of Appeal in *Morales* need not have gone so far. The allegedly contumacious conduct was tardiness, and tardiness, the Court of Appeal went on to hold, could not have been punished as direct contempt under the circumstances shown in that case because "nothing happen[ed] in the immediate view and presence of the court, but the court

obviously act[ed] on information obtained from attachés." (*Id.* at p. 951.) Most of the cases that rely on *Morales* may be distinguished from the case at bar on similar grounds. In *In re Smith* (1976) 65 Cal.App.3d 291, 298 [135 Cal.Rptr. 5], the Court of Appeal found that neither of the two minute orders at issue there "contains a recital that the contempt was 'committed in the immediate view and presence of the court.' (§ 1211, Code Civ. Proc.) For that reason alone the order must be annulled. (*In re Rosen* [(1973)] 31 Cal.App.3d 71, 74 [106 Cal.Rptr. 757]; *Morales* v. *Superior Court*, [*supra,*] 239 Cal.App.2d 947, 950 . . . .)" However, more fundamentally, the Court of Appeal held the orders invalid because they were "totally devoid of any showing on their face of facts constituting legal contempts or where they occurred." (*In re Smith, supra,* 65 Cal.App.3d at p. 296.) Similarly, in *In re Baroldi* (1987) 189 Cal.App.3d 101, 110 [234 Cal.Rptr. 286], the Court of Appeal found a contempt order defective for failure to recite that the conduct occurred in the immediate view and presence of the court, but went on to hold the order was also void for failure to state the facts with sufficient particularity to demonstrate on its face, without the aid of speculation, that petitioner's conduct constituted contempt. In *Bloom v. Superior Court* (1986) 185 Cal.App.3d 409 [229 Cal.Rptr. 747], the text of the order of contempt is not set forth in the opinion, so we cannot ascertain whether the Court of Appeal found it defective solely because it failed to recite the magic phrase petitioner insists upon.

Not so easily distinguished is *In re Rosen, supra,* 31 Cal.App.3d 71. There the facts recited in the contempt order arguably permitted an inference that the cited conduct occurred in the immediate view and presence of the court. (*Id.* at p. 72, fn. 1.) Nevertheless, the Court of Appeal found the order defective for failing to explicitly so state. "It is readily apparent that the court's order fails to comply with [section 1211] in that it does not contain a recital that the contempt was committed in the immediate view and presence of the court. For that reason alone the order must be annulled. (*Morales* v. *Superior Court*, [*supra,*] 239 Cal.App.2d 947, 950 . . . .) We cannot, as suggested by respondent at oral argument, read into the court's order matters which assertedly are implicit therein." (*In re Rosen, supra,* 31 Cal.App.3d at p. 74.) We do not agree. If the underlying facts recited in an order of contempt sufficiently demonstrate that the contumacious conduct occurred in the immediate view and presence of the court, section 1211 is satisfied in that regard, and the order need not recite the statutory formula. Insofar as they are inconsistent with this opinion, the following cases are disapproved: *In re Baroldi, supra,* 189 Cal.App.3d 101; *Bloom v. Superior Court, supra,* 185 Cal.App.3d 409; *In re Smith, supra,* 65 Cal.App.3d 291; *In re Rosen, supra,* 31 Cal.App.3d 71; *Morales v. Superior Court, supra,* 239 Cal.App.2d 947.

WARNINGS

According to the order, petitioner was held in contempt for his *tone of voice*. "Mr. Boysaw then began loudly yelling at the court in an extremely rude, hostile and disrespectful tone of voice." ▮ When an order of contempt is based on the tone of voice used by the alleged contemner, the order must recite that he was warned his tone of voice was objectionable. Section 1211, subdivision (a), does not expressly require the order to recite such a warning, but that is the lesson correctly drawn from our cases by the authors of the California Judges Benchbook. "Unless the conduct is outrageous and immediately recognizable as an act of contempt, the judge should warn the person that further similar conduct will result in a citation for contempt. Such a warning should be made on the record, and any contempt order should indicate that a warning was given. See *In re Hallinan* (1969) 71 C[al.]2d 1179, 1181, 1183-1184 [81 Cal.Rptr. 1, 459 P.2d 255]." (Cal. Judges Benchbook: Civil Proceedings Before Trial (CJER 1995) Sanctions and Contempt, § 17.98, pp. 966-967.) "If adjudication depends on the volume, accent, inflection, or tone of voice, or on manner, facial expression, or demeanor, this aspect must be described in detail. Any admonition or rebuke that was given should also be recited. See *Gallagher v Municipal Court* (1948) 31 C[al.]2d 784, 797 [192 P.2d 905]. If a warning was required, *e.g.*, because the statement made was not contemptuous on its face (see § 17.98), the order must recite that warning. *In re Hallinan*[, *supra*, 71 Cal.]2d 1179, 1183 . . . .)" (*Id.*, § 17.104, p. 969.)

▮ The facts constituting direct contempt must be stated with specificity in the order itself. "An order adjudging a person guilty of contempt in the immediate view and presence of the court must recite facts showing acts which constitute a contempt. (Code Civ. Proc., § 1211.) This is jurisdictional, and *an order which assumes to punish summarily a direct contempt of court is void unless it shows on its face facts sufficient to constitute a legal contempt.* [Citations.] Such facts must be stated with sufficient particularity to show, without aid of speculation, that contempt actually occurred. [Citation.]" (*Chula v. Superior Court* (1962) 57 Cal.2d 199, 203 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421], italics added.) ▮ In a case such as this, what is required to support a finding of direct contempt is not simply that the alleged contemner used an objectionable tone of voice, but that he continued to do so after being admonished. "When the contempt order is based on statements of an attorney made in open court the language of which is in itself not insolent, contemptuous or disorderly, the cases have held that something more is required to support the order than the mere recital therein

that the tone of voice used was contemptuous." (*In re Hallinan, supra,* 71 Cal.2d 1179, 1181-1182.) "If a trial judge had only to state that the contemnor raised his voice and twisted his features, no contempt order could be attacked." (*Gallagher v. Municipal Court, supra,* 31 Cal.2d 784, 795.) "The record must show that the judge first *warned* the attorney that his tone of voice and facial expression are offensive. ([*In re Hallinan, supra,* 71 Cal.2d] at p. 1185; *Gallagher v. Municipal Court, supra,* at p. 797.)" (*In re Buckley, supra,* 10 Cal.3d at p. 249, fn. 15, italics added.) Therefore, to support the finding of direct contempt in this case, the order should have recited that petitioner was warned that the tone of voice he was using toward the court was objectionable.[2] The practical rationale for this rule is that when review is sought for summary contempt, the order may be the only record immediately available.

Finally, we wish to emphasize that had the trial court rested its finding of contempt upon petitioner's direct refusal to obey the court's order not to continue arguing its evidentiary ruling, or upon the rude, hostile, and disrespectful *content* of petitioner's response ("The Court: Don't argue, Mr. Boysaw. [¶] Mr. Boysaw: I am arguing"), such a finding would have supported an order of contempt.

---

[2]Because the order of contempt must be annulled for failure to reference an adequate warning, we need not reach respondent's claim that the record extrinsic to the order reveals that adequate warnings were in fact given. In fact, even if they had been recited in the order, the warnings upon which respondent relies were not adequate. According to the order, petitioner was held in contempt for "yelling *at the judge* in front of the jury in a loud, rude, hostile and disrespectful tone of voice." (Italics added.) The warnings he received had to do with the tone of voice he was using toward a witness, not the judge, and thus the admonitions could not support the order. (*In re Hallinan, supra,* 71 Cal.2d at p. 1184.) In *Hallinan,* the order of contempt recited that the petitioner was being held in contempt for statements made in an " 'antagonistic, insulting and disrespectful tone of voice.' " (*Id.* at p. 1182, fn. 2.) In the first of two cited statements, the petitioner said " 'the restrictions that have been imposed upon the evidence' " were " 'unfair' " to the defendant, which the court took as an accusation that he was " 'siding' " with the prosecution. (*Id.* at p. 1181, fn. 2.) In the second statement, the petitioner, in excusing the deputy district attorney from the witness stand, said he might " 'crawl down.' " (*Id.* at p. 1182, fn. 2.) In annulling the contempt order, we found the judge had failed to warn the petitioner his tone of voice or manner was objectionable with regard to either of the statements. As to the petitioner's statement that the judge's evidentiary rulings were " 'unfair' " to the defendant, "the only warning given by the court was as to the possible intent of petitioner as shown by the words petitioner used, and no mention was made of objection to petitioner's tone of voice or manner." (*Id.* at p. 1184.) As to the petitioner's statement that the deputy district attorney might " 'crawl down' " from the witness stand, the "petitioner's remark to the witness would not appear to constitute contemptuous or insolent behaviour toward the *judge* . . . ." (*Ibid.*)

## DISPOSITION

The order of contempt is annulled.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.