Filed 1/7/21  Rollins v. Superior Court CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THOMAS ROLLINS,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF HUMBOLDT COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | A160553<br><br>(Humboldt County<br>Super. Ct. Nos. FIN002,<br>FL180538) |

        Thomas Rollins, a nonparty to a family law case in the superior court, was held in direct contempt for his behavior when he appeared on camera during a remote video hearing.  He filed a petition for writ of habeas corpus, prohibition, or other appropriate relief challenging the contempt order on several grounds.  Because we conclude the contempt order suffers fatal procedural defects and is insufficiently specific, we grant the petition and annul the contempt order.

## I.  BACKGROUND

        On July 13, 2020, Rollins's wife, Lisa R., attended a hearing in her family law case, conducted via video conference.  Lisa R. participated in the

video conference from the living room of the home that she shares with Rollins in Southern California. Lisa R. was unrepresented by counsel.

At the beginning of the hearing, Lisa R. asked the court if the court reporter she had requested was present. The court determined a court reporter was not available. The other party, Lisa R.'s ex-husband and father of their child, asked about scheduling a custodial visit for that coming weekend. The court granted his request, and ordered that parenting time would be unsupervised as previously ordered. Lisa R. requested that she not be required to pay for her ex-husband's hotel expenses during his visits. The court denied her request.

At some point during or just after this exchange, Rollins, who was in the living room but apparently off camera, made comments which were overheard by the court. The court directed parties not on calendar to leave the room. Rollins left the room and the judge ordered Lisa R. to use the camera on her computer to show him the living room so he could confirm no one was in the room with her. Lisa R. complied and the court verified Rollins was no longer in the room.

The court continued to address the parties and was interrupted by "a yelling Thomas Rollins." According to the trial court's minutes, the court "attempt[ed] to admonish Mr. Rollins" and then held him in direct contempt.

The trial court's "Direct Contempt Findings and Order," filed the day after the video hearing, states as follows:

"On July 13, 2020, in immediate view and presence of the court via Zoom, Contemnor Thomas Rollins herein referred to as 'Contemnor', was appearing in Case No. FL180538 on his cell phone and in person with [Lisa R.]. Contemnor is the current significant other to [Lisa R.]. During a protracted discussion between the court and the parties, Contemnor made

2

comments from outside the camera frame and was warned to stop. Contemnor then continued to make comments and came into view on the Zoom camera frame making gestures while commenting. I then ordered Contemnor to leave the room that [Lisa R.] was appearing in court from and Contemnor then came into view of the camera and started yelling at the court. Contemnor was told to stop several times and refused to stop and was warned that failure to stop would constitute contempt. Contemnor continued yelling and the court informed him that he had been found in contempt. He then stormed out of the room. There was no court reporter present during this proceeding.

"Because of the behavior of Contemnor, no discussion regarding any excuse for his behavior nor any apology was offered prior to court going into recess for the morning.

"After due consideration, the court finds, beyond a reasonable doubt, that the Contemnor is guilty of contempt of court in violation of §1209[, subdivision] (a) of the Code of Civil Procedure as follows:

"Disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of trial or other judicial proceeding; and, a breach of the peace or boisterous conduct tending to interrupt the due course of a trial or other judicial proceeding."

The court sentenced Rollins to three days in the Humboldt County Correctional Facility and imposed a $300 fine. The court issued a "no cite and release" warrant for his arrest and set bond at $10,000.

Rollins filed in this court a petition for writ of habeas corpus, prohibition, or other appropriate relief challenging the contempt order, which we summarily denied. Rollins then filed a petition for review in the Supreme Court. The Supreme Court issued a stay of the direct contempt order and the

3

body attachment and warrant of arrest. By order filed on September 9, 2020, the Supreme granted the petition for review and transferred the matter back to us, directing that we vacate our order denying the writ and issue an order directing the superior court to show cause why the relief sought in the petition should not be granted.

We vacated our prior order, issued a stay of the direct contempt order and the body attachment and warrant of arrest, issued an order to show cause, provided the parties with an opportunity to submit supplemental briefs, and set the matter for hearing.

## II. DISCUSSION

Rollins raises three arguments. First, he contends he cannot be held in direct contempt because he was not in the immediate presence of the court during the video hearing. Second, he argues the trial court's contempt order infringed on his constitutional rights to free speech and to privacy in his own home. Third, he argues the order is procedurally defective because it failed to recite an adequate warning, lacks required specificity regarding the conduct constituting contempt, and the trial court failed to give Rollins an opportunity to present a defense or explain mitigating circumstances. Because we conclude the order of contempt is procedurally defective, we need not reach his first two arguments.

A contempt committed in the immediate view and presence of the court is direct contempt that may be treated summarily. (*In re Buckley* (1973) 10 Cal.3d 237, 247.) " 'All that is required is that an order be made reciting the facts, adjudging the person guilty and prescribing the punishment.' " (*Ibid.*, citing Code Civ. Proc., § 1211.) A direct contempt order, however, is valid only if it recites facts with sufficient particularity to show, without aid of speculation, that petitioner's conduct constituted a legal contempt.

4

(*Boysaw v. Superior Court* (2000) 23 Cal.4th 215, 222 (*Boysaw*).) The recital of facts requirement is not satisfied by a judge's conclusions as to the acts constituting the contempt nor may the order be sustained by reference to extrinsic documents, although a transcript which places the conduct in context may be attached to the order. (*In re Littlefield* (1993) 5 Cal.4th 122, 138 & fn. 10; *Gallagher v. Municipal Court* (1948) 31 Cal.2d 784, 794.) These requirements are jurisdictional; if the order is insufficiently specific, the judgment of contempt is void. (*Boysaw*, at p. 222.)

The power to adjudicate direct contempt must be used prudently and with a view toward promoting the orderly administration of law rather than any form of vindication of a judge's character. (*Lyons v. Superior Court* (1955) 43 Cal.2d 755, 762–763; *Mowrer v. Superior Court* (1969) 3 Cal.App.3d 223, 232.) On review of a direct contempt proceeding " 'the evidence, the findings, and the judgment are all to be strictly construed in favor of the accused.' " (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1256, italics omitted.) There is no presumption of correctness; all presumptions are drawn against the validity of the contempt order. (*Ibid.*; *Koehler v. Superior Court* (2010) 181 Cal.App.4th 1153, 1166–1167.)

We find our Supreme Court's guidance in *Boysaw, supra,* 23 Cal.4th 215, particularly instructive in resolving this case. There, the superior court held the petitioner in direct contempt for " 'loudly yelling at the court in an extremely rude, hostile and disrespectful tone of voice.' " (*Id.* at p. 222.) In finding the contempt order invalid, our Supreme Court held: "When an order of contempt is based on the tone of voice used by the alleged contemner, the order must recite that he was warned his tone of voice was objectionable. [Code of Civil Procedure,] [s]ection 1211, subdivision (a), does not expressly require the order to recite such a warning, but that is the lesson correctly

5

drawn from our cases by the authors of the California Judges Benchbook. 'Unless the conduct is outrageous and immediately recognizable as an act of contempt, the judge should warn the person that further similar conduct will result in a citation for contempt. Such a warning should be made on the record, and any contempt order should indicate that a warning was given. [Citation.]' [Citation.] 'If adjudication depends on the volume, accent, inflection, or tone of voice, or on manner, facial expression, or demeanor, this aspect must be described in detail. Any admonition or rebuke that was given should also be recited. [Citation.] If a warning was required, e.g., because the statement was not contemptuous on its face [citation], the order must recite that warning.' " (*Ibid.*)

Here, the trial court's order did not recite the warning given to Rollins when it admonished that he was subject to contempt. The court's order only states generally that "Contemnor was told to stop several times and refused to stop and was warned that failure to stop would constitute contempt." Nor does the order reflect that the court specifically warned Rollins he would be held in contempt for his tone of voice, i.e., for yelling at the court, which our Supreme Court has held is required unless the petitioner's conduct is contemptuous on its face. (See *Boysaw*, *supra*, 23 Cal.4th at p. 223 [to support finding of direct contempt, "order should have recited that petitioner was warned that the tone of voice he was using toward the court was objectionable"]; *In re Hallinan* (1969) 71 Cal.2d 1179, 1185 [record must show that the judge first *warned* attorney that " 'his tone and facial expressions are offensive and tend to interrupt the due course of the proceeding' "].)

Further, "[t]he facts constituting direct contempt must be stated with specificity in the order itself. 'An order adjudging a person guilty of contempt in the immediate view and presence of the court must recite facts showing

6

acts which constitute a contempt. [Citation.] This is jurisdictional, and *an order which assumes to punish summarily a direct contempt of court is void unless it shows on its face facts sufficient to constitute a legal contempt.* [Citations.] Such facts must be stated with sufficient particularity to show, without aid of speculation, that contempt actually occurred. [Citation.]' [Citation.] In a case such as this, what is required to support a finding of direct contempt is not simply that the alleged contemner used an objectionable tone of voice, but that he continued to do so after being admonished. 'When the contempt order is based on statements . . . made in open court the language of which is in itself not insolent, contemptuous or disorderly, the cases have held that something more is required to support the order than the mere recital therein that the tone of voice used was contemptuous.' [Citation.] . . . Therefore, to support the finding of direct contempt in this case, the order should have recited that petitioner was warned that the tone of voice he was using toward the court was objectionable. The practical rationale for this rule is that when review is sought for summary contempt, the order may be the only record immediately available." (*Boysaw, supra,* 23 Cal.4th at pp. 222–223, italics added by *Boysaw*, fn. omitted.)

Here, the court's order states that Rollins "made comments from outside the camera frame and was warned to stop," "continued to make comments and came into view . . . making gestures while commenting," and "started yelling at the court." The court told him to "stop" several times, but the court's admonition is not recited, and it is not clear on this record whether the court held Rollins in contempt for his yelling, his comments, his gestures, or all three. Because neither Rollins's words nor his gestures are described in detail and there is no transcript of the hearing, we cannot

7

determine they are contemptuous on their face. And because it is unclear whether the court specifically warned Rollins that the tone of his voice (i.e., his yelling) would subject him to contempt, we cannot uphold the order.

Accordingly, we conclude the direct contempt order is unenforceable and the judgment of contempt is void. Rollins may not be subjected to further proceedings for the same conduct. Thus, we need not consider his other challenges to the order and judgment of contempt.

We emphasize we are compelled to grant relief in this case due to technical procedural noncompliance with the requirements our Supreme Court has mandated for direct contempt orders. Although Rollins has succeeded on his petition, we do not condone his behavior, which he apparently conceded was inappropriate in an apology letter to the court.

### III. DISPOSITION

The order of July 14, 2020 finding Rollins guilty of contempt is annulled. The stay previously imposed shall remain in effect until the remittitur issues.

MARGULIES, J.


WE CONCUR:


HUMES, P. J.


SANCHEZ, J.


A160553
*Rollins v. Superior Court*

9