Filed 11/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEVIN J. MOORE, | |
| Petitioner, | G058609 |
| v. | (Super. Ct. No. 30-2017-00958698) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O P I N I O N |
| Respondent; | |
| BRYNA BARSKY, | |
| Real Party in Interest. | |

Original proceedings; petition for writ of review challenging a final order of contempt of the Superior Court of Orange County, Jacki C. Brown, Judge. Order annulled in part and sustained in part.

Moore & Associates, Kevin J. Moore, Kevin M. Bayley; Mortensen & Reinheimer and Noah B. Herbold for Petitioner.

No appearance for Respondent.

Hartog, Baer & Hand, David W. Baer, and David Y. Parnall for Real Party in Interest.

*          *          *

While representing a client at a mandatory settlement conference (MSC) before a temporary judge, petitioner Kevin Moore was rude and unprofessional. Among other things, Moore (1) persistently yelled at and interrupted other participants; (2) accused opposing counsel of lying while providing no evidence to support his accusation; (3) refused to engage in settlement discussions; and (4) effectively prevented the settlement officer from invoking the aid and authority of the supervising judge by asserting this would unlawfully divulge settlement information. To make matters worse, Moore later acknowledged that his contemptuous behavior was the result of a tactical decision he had made to act in such a manner in advance of the MSC. After a hearing, respondent court convicted Moore of four counts of civil contempt, imposed a $900 fine for each count ($3,600 total), and ordered the payment of attorney fees and costs to the opposing party. (See Code Civ. Proc., § 1209 et seq.)[1]

Moore here challenges all four contempt convictions and the associated punishments. We conclude the record and applicable law require that three of Moore's convictions be overturned. We affirm one conviction and the punishment required for that offense, and we order the clerk of this court to make the required notification to the State Bar for whatever additional action the Bar may consider appropriate. We also find the award of attorney fees and costs here is precluded by statute.

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise specified.

**FACTS AND PROCEDURAL HISTORY**

*Summary of the Underlying Case*

Real party in interest Bryna Barsky and Jeffrey Ex were married from 1995 until 2011. They had two children during their marriage. Barsky and the coincidentally named Ex resolved their dissolution action by stipulated judgment, which provided for child support payments to Barsky.

Ex received $100,000 from a family trust in May 2016 but did not use the money to extinguish his child support obligations. Barsky filed a trust petition in 2017 to secure payment of the accrued child support from the trust (the probate proceeding). Ex owed Barsky approximately $82,000 at the time of trial.

Moore represented the trustee in the probate proceeding. The trustee asserted he was not authorized to distribute money from the trust to Ex, at least so long as the primary beneficiary (Ex's stepmother) was alive. The trustee characterized the April 2016 transfer of $100,000 as a loan to Ex (approved by Ex's stepmother).

The probate proceeding was resolved following a bench trial. The court's July 2019 statement of decision ordered (1) a lien to be attached to Ex's present or future trust interests; (2) the enjoinment of the trustee from providing any distribution (however characterized) to Ex without providing 60-day advance notice to Barsky and her counsel; and (3) the trustee to deduct monthly support payments for the children from any payment to Ex. The order also awarded attorney fees to Barsky, to be paid out of the trust, based on the trustee's bad faith misconduct committed while litigating the case. The record provided with the writ petition does not describe further proceedings in the probate proceeding.

The contempt proceedings arose out of Moore's conduct at a mandatory settlement conference prior to the probate trial.

*The January 2019 Settlement Conference*

By minute order, respondent court scheduled a mandatory settlement conference for January 2019. The court directed "[t]rial [c]ounsel, parties and persons with full authority to settle the case [to] personally attend." The court also ordered "[s]ettlement [c]onference [s]tatements" to be "filed at least five court days prior to" the conference. The Superior Court of Orange County, Local Rules, rule 316 obligates parties to file a settlement conference statement and to participate in good faith at the settlement conference.

The settlement conference proceeded as scheduled. It is Moore's behavior during that MSC that is at issue here. After a hearing, the trial court found it to be contemptuous and imposed the sanctions that are the subject of this appeal. Roy C. Zukerman, acting as a temporary judge, was the settlement officer. Moore and his associate, Debby Doitch, were present with their client, the trustee. Barsky and her elder son attended the conference with their attorney, David Parnall. Barsky, her son, and Parnall travelled to Orange County from northern California to attend.

The MSC lasted approximately fifteen minutes. It did not result in a settlement of the case. Zukerman is an experienced attorney[2] and settlement officer.[3] After the failed settlement conference, Zukerman (the only disinterested attendee of the settlement conference) executed a declaration describing his recollection of events as they occurred during the aborted MSC.

Zukerman's declaration identified several problems with the conduct of Moore, his associate, and his client. No settlement conference statement was filed by the trustee. When Zukerman asked why he had not received the statement, Doitch "stated

---

[2]    He was licensed in 1965.

[3]    He has conducted more than 200 settlement conferences.

4

that she and attorney Moore had not filed such a statement because 'this case is only about damages.'"

Zukerman suggested what he believed was an appropriate resolution to the lawsuit, i.e., the imposition of a lien against the trust such that funds available in the future to Ex would be first paid to Barsky. "In response to my proposal, attorney Moore was extremely rude, verbally aggressive, and unprofessional—not only toward attorney Parnall, but also toward me."

Zukerman recalled that Moore's abusive conduct continued. Moore yelled at and accused attorney Parnall of lying, without offering any specifics to support his allegations; he accused Parnall of failing to research the case, without rebutting authorities cited in Parnall's submissions; he interrupted, talked over, and yelled at Parnall and Zukerman; and he refused to calm down upon request. Zukerman stated Parnall was professional and composed throughout the conference and that he unsuccessfully attempted to calm Moore down.

Zukerman concluded, "In my opinion, [trustee], attorney . . . Moore, and attorney . . . Doitch failed to 'participate in good faith' in the MSC, as required by . . . Local Rule 316(E)." "After a total of only approximately 15 minutes, I ended the MSC. It was obvious to me that in view of the unyielding position of attorney Moore the matter could not be settled . . . ."

*Initiation of Contempt Proceedings*

Barsky obtained the Zukerman declaration in an effort to supplement her probate petition, adding allegations about the bad faith of the trustee and his attorneys. Barsky's supplement asserted grounds for the potential recovery of attorney fees and litigation costs in the probate proceeding to be paid out of the trust.

Barsky also moved in limine to include testimony by Zukerman during the trial on the probate petition. The court reviewed the Zukerman declaration and granted the motion to allow Zukerman to testify.

After ruling on the motion in limine, the court addressed the contempt issue: "[B]ased on [the Zukerman declaration's] contents, I now set an order to show cause in re contempt by the individual Kevin Moore, and I'm going to set that for" a hearing. "[W]e do need to draw up the statement of probable cause for contempt, and I will be inviting Mr. Parnall to . . . draft it based on just what is placed in the declaration by Mr. Zukerman. I . . . do not think it would be appropriate to try and pull in anything other than what is related in the facts in that declaration as the basis for the contempt."

During the ensuing probate trial, the court heard the testimony of Zukerman, which included cross-examination. Zukerman explained he was appointed to serve as a temporary judge for the settlement conference. He noted that approximately 25-35 percent of parties fail to file a settlement conference statement.

During his testimony, Zukerman addressed petitioner Moore's misconduct: "counsel for the trustee became very obstreperous, interrupted me, interrupted Mr. Parnall, [and] just about anything that either Mr. Parnall or I said, we were unable to complete a sentence without being interrupted. And the attorney indicated an absolute refusal to even consider . . . accepting the lien, at which point I determined that there was no point in going further."

Zukerman explained his thinking in this regard. "When an attorney argues with me, butts in every time I try to start a sentence, and calls the opposing attorney a liar, I feel that attorney does not want to continue with the settlement conference." Zukerman then repeated his opinion that Moore did not participate in good faith in the settlement conference. Zukerman did not testify with regard to any statements by Moore about whether Zukerman could consult with the trial judge about Moore's behavior.

6

On April 18, 2019, the court issued a statement of probable cause accompanied by an order to show cause related to Moore's conduct during the MSC: "Barsky having presented to this Court sufficient grounds to initiate a contempt proceeding, you are ordered to appear . . . to show cause why you should not be held in contempt for violation of this Court's Local Rule No. 316(B) requiring parties to file a settlement conference statement; No. 316(E) requiring all persons to 'prepare reasonably for . . . or participate in good faith in a settlement conference'; and the Court's order of September 17, 2018 that the parties 'fil[e] settlement conference statements five court days before the MSC on January 11th[.]' This order to show cause is based upon the Declaration of Roy C. Zukerman, attached hereto as Exhibit A, and the testimony of Mr. Zukerman taken at trial in the instant matter on April 12, 2019." The order was personally served on Moore's associate attorney, Debby Doitch.

Moore filed written opposition to the show cause order, arguing this was just a case of "differing legal opinions." He then explained how he arrived at this conclusion. "Generally, in settlement negotiations there is a lot of room to negotiate percentage interests between two competing beneficiaries. In this case, however, the issue was more black or white: could the trust pay a creditor now, or accept a lien of a creditor, on a trust corpus prior to the debtor's interest having vested?" Moore claimed he had prepared for the conference and appeared armed with information and arguments. He concluded, "Failure to accept a settlement offer . . . does not equate to a failure to participate in a settlement conference . . . ."

Moore's written opposition conceded "his frustration with this case and his zealous advocacy of his client got the better of him during the MSC, which regrettably caused Mr. Zuckerman [*sic*] and Mr. Parnall to take offense . . . ."

Moore's petition for writ of review, which brings the matter to this court, clarified his state of mind at the outset of the MSC: "At the MSC, [Moore] *employed a*

7

*tactic* in representing his client that included raising his voice and accusing [opposing counsel] of making false statements, which [Moore] believed to be true." (Italics added.)

*Contempt Trial*

A contempt trial proceeded through several days of testimony and argument in June, August, and September 2019. In addition to Zukerman's probate trial testimony (which was treated as evidence for purposes of the contempt trial), the court heard live testimony from Parnall, Barsky, Moore, and Doitch.

Barsky testified she was disturbed by Moore's disrespectful yelling. At one point, Moore "looked at my attorney and stated 'you could be dead'" which made Barsky "sick to [her] stomach." After the conference, Moore, Doitch and the trustee "exited the settlement conference room" and were "laughing."

Parnall confirmed the gist of Zukerman's testimony. He also added this new material: "Toward the end of the MSC, Zukerman appeared frustrated with Moore's conduct. Zukerman rose from his chair and stated that he would request the intervention of the judge presiding over the matter . . . . As he rose, Moore forcefully said something to the effect of, 'You can't go to the judge, this is a confidential proceeding.' Moore's words prompted Zukerman not to follow through with his decision to seek . . . assistance."[4]

According to Parnall, Doitch called him the afternoon following the conference and apologized for Moore's conduct. In Parnall's opinion, the parties were not at an impasse in negotiations due to good faith differences in opinion. Instead, Moore refused "to engage in a legal analysis" or "to consider [Barsky's] opinion." Parnall

---

[4] Zukerman's declaration makes no mention of any statements made by Moore concerning the prospect of Zukerman consulting with the supervising trial judge about Moore's behavior.

8

concluded, "Moore's conduct at the MSC was a pronounced escalation from typical posturing or 'saber rattling.'"

During the contempt hearing, Moore testified that, as the MSC began, he was ready and authorized to settle the case. He was familiar with the legal and factual issues. Moore was surprised and "a little bit angry" at Doitch for not filing the statement. But he understood her failure was caused in part by a medical emergency.

Moore testified he began the conference with a "regular, normal" demeanor. From Moore's perspective, Zukerman was convinced by Barsky's position from the outset of the conference, and the temporary judge refused to consider the trustee's position.

Moore continued. "[W]hen I get passionate about a case, I get animated, and so I was probably animated at that time because I'm . . . trying to set forth . . . my position. So it was probably a little heightened . . . . [¶] . . . [¶] I think it's a matter of opinion, but I can respect Mr. Zukerman in his interpretation that my behavior may have been rude. [¶] . . . [¶] I was certainly pointed, and I was . . . testy certainly. . . . [¶] . . . [¶] I'll accept Mr. Zukerman's opinion that, okay, I was verbally aggressive."

Moore testified his reference to Parnall's death was not a threat, but was simply an illustration of the difficulties he saw in implementing long-term lien and notification requirements on the trust, given his expectation that the primary beneficiary (Ex's stepmother) would live for a long time.

Moore believed Parnall was making "false and misleading statements" to Zukerman, which Moore intended to correct. In short, Moore disagreed with the premise of the underlying lawsuit, which he characterizes as one in which "a judgment creditor of a contingent beneficiary of a non-existent trust was seeking to compel distributions from a marital trust that had only one surviving spouse beneficiary or to obtain a lien on a contingent beneficial interest without having to prove the necessary elements . . . ."

9

Contradicting Parnall, Moore testified that he "wholeheartedly welcomed" any assistance from the judge supervising the settlement conferences.

Finally, essentially acknowledging his impropriety, and perhaps hoping that an act of contrition might cause him to escape any further consequences for his improvident behavior, Moore offered an apology to the attendees of the MSC at the conclusion of his direct examination.

During her testimony, Doitch acknowledged it was her responsibility to file the mandatory settlement conference statement and apologized for her failure to do so. She intended to file the statement, but suffered a medical emergency the day it was due. In Doitch's view, Zukerman's "insistence on a lien being the only manner of resolution caused Mr. Moore to become unsettled." Doitch denied any bad faith on her part or on Moore's part during the entire litigation, including the settlement conference.

*Rulings*

On September 27, 2019, respondent court found Moore to be in contempt for his conduct at the MSC. The court fined petitioner $900 for each of the following four categories of misconduct: (1) yelling and interrupting Zukerman and Parnall; (2) falsely accusing opposing counsel of lying without explanation; (3) refusing to engage in settlement discussions; and (4) blocking the temporary judge from invoking the aid and authority of the supervising judge by threatening that this would unlawfully divulge settlement information. The court also ordered that Barsky's attorney fees and costs be paid by Moore.

The court found Moore's "conduct and statements were totally unprofessional, resulting in the disruption of a hearing essential to the orderly functioning of the Court . . . ." It found Zukerman and Parnall to be credible, and Moore not credible. The court rejected Moore's argument that there was a "failure of proof" with regard to indirect contempt. The court believed Moore's argument wrongly assumed that only a

10

violation of a court order can form the basis for an indirect contempt charge. The court identified section 1209, subdivisions (a)(1) and (a)(9), as having been violated by Moore.

The court found the trustee failed to file a settlement conference statement, but Moore was not necessarily responsible for that conduct and so he could not be found guilty of contempt for that omission.

Moore had filed a motion to dismiss the contempt proceedings on September 17, 2019 (i.e., after testimony was complete but before the court ruled on the merits). In his motion, Moore argued that the court lacked jurisdiction to proceed because there were insufficient allegations in the charging documents. Moore also argued insufficient evidence had been presented to find him guilty and that, as a substantive matter, violation of a local rule does not amount to contempt of court.

On November 20, 2019, having determined that the motion to dismiss required a ruling despite its tardiness, the court denied petitioner's motion to dismiss the contempt charges.

## The Writ Proceedings

There is no adequate remedy at law for a contempt judgment; it is final and non-appealable. (See § 904.1, subd. (a)(1) [appeal can be taken from a judgment "except . . . a judgment of contempt that is made final and conclusive by Section 1222"]; § 1222 ["The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive"].)

Moore promptly filed a petition for writ of review of the contempt judgment. The parties filed formal briefing and argued the matter before this court.

## ANALYSIS

## Law of Civil Contempt – General Framework

Section 1209 sets forth twelve categories of conduct that can amount to civil contempt, including "(1) Disorderly, contemptuous, or insolent behavior toward the

11

judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding"; "(5) Disobedience of any lawful judgment, order, or process of the court"; and "(9) Any other unlawful interference with the process or proceedings of a court." (*Id.,* subd. (a)(1), (5), (9).)

There are two types of civil contempt, direct and indirect contempt. This was not a "direct contempt" case since the offending conduct was not committed in respondent court's presence and punished summarily. (§ 1211, subd. (a).) Instead, this was an "indirect contempt," i.e., "not committed in the immediate view and presence of the court." (§ 1211, subd. (a).) Although the settlement officer was acting as a temporary judge at the settlement conference, he did not pursue summary contempt proceedings (we express no opinion on whether he should or could have done so). (See *Rosenstock v. Municipal Court* (1976) 61 Cal.App.3d 1, 7-8.) The trial judge subsequently initiated indirect contempt proceedings based on reports of Moore's behavior she received at the settlement conference.

An "indirect contempt" requires a sequential series of steps: (1) an affidavit is presented to the court of the facts constituting the contempt; (2) a warrant of attachment or order to show cause is issued; (3) service of the warrant or order; (4) if there is a warrant (not applicable here), arrest and bail may occur; (5) a hearing, at which the judge investigates the charge and hears any answer, including witnesses; and (6) findings and punishment. (Levenson, Cal. Criminal Procedure (The Rutter Group) Trial ¶ 23:83 [citing §§ 1016, 1211-1215, 1217-1218].)

Here, every required step was taken. An affidavit was presented to the court; an order to show cause issued; the order to show cause was served on Moore; a full hearing (with witnesses) was conducted; and the court made findings and then imposed punishment.

12

Appellate review of contempt proceedings is not subject to ordinary presumptions of regularity and correctness. Instead, we must strictly construe the evidence in the record, the court's findings, and the contempt judgment itself to ensure the propriety of Moore's convictions and punishment. (*Koehler v. Superior Court* (2010) 181 Cal.App.4th 1153, 1166-1167 (*Koehler*); see also *Van v. LanguageLine Solutions* (2017) 8 Cal.App.5th 73, 81.)

With that in mind, we turn to the issues raised by the petition. Moore asserts the contempt order must be vacated in its entirety because (1) the court lacked subject matter jurisdiction; (2) Moore's due process rights were violated; (3) counts three and four were not supported by substantial evidence; (4) falsely accusing opposing counsel of lying or refusing to engage in settlement discussions do not amount to contempt; (5) there was inadequate warning that Moore's conduct at the conference would result in contempt charges; and (6) the award of attorney fees and costs was unauthorized. We asked the parties to address a seventh issue, the applicability of Penal Code section 654 (section 654) to the four contempt convictions. We analyze each issue below.

## Subject Matter Jurisdiction

Moore first contends respondent court lacked subject matter jurisdiction.

In an indirect contempt proceeding, "an affidavit shall be presented to the court . . . of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers." (§ 1211, subd. (a); see also *Koehler*, *supra*, 181 Cal.App.4th at p. 1169 ["indirect contempt requires there be an initiating affidavit, and without one any contempt order is void"].)

Objections to the sufficiency of an affidavit can be waived (§ 1211.5, subd. (a)) and the affidavit may be amended to fix defects or insufficiencies "at any stage

of the proceedings" (§ 1211.5, subd. (b)). "No order or judgment of conviction of contempt shall be set aside, nor new trial granted, for any error as to any matter of pleading in such affidavit or statement, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (§ 1211.5, subd. (c).)

The "affidavit" in this case was unconventional, in that Zukerman's declaration was not created with the intention of initiating contempt proceedings. And, as we discuss in more detail in the next section pertaining to due process, the order to show cause prepared by Barsky's counsel did not enumerate the contempt counts in a manner aligned with the ultimate outcome of the case.

Nevertheless, the charging documents set forth the facts that constituted the contempt for which Moore was convicted, i.e., his misconduct and lack of good faith as demonstrated by his obnoxious behavior throughout the 15-minute settlement conference. Even assuming there are technical deficiencies in the affidavit or order to show cause, no miscarriage of justice occurred in the assertion of jurisdiction by means of these documents. (See *In re Cowan* (1991) 230 Cal.App.3d 1281, 1288 [only a complete absence of an affidavit creates a jurisdictional defect].)

We are not persuaded by Moore's argument that the charging documents insufficiently alleged a violation of a court order. The essential facts to establish contempt for violation of a court order are "(1) the making of the order, (2) knowledge of the order, (3) ability of the respondent to render compliance, and (4) willful disobedience of the order." (E.g., *People v. Superior Court* (1965) 239 Cal.App.2d 99, 104.) But we need not resolve this issue because Moore was not convicted of disobeying a court order. He was convicted of other contemptuous behavior at the conference, described in detail in the Zukerman declaration. Violating a court order is a "'common example'" of indirect contempt (*Koehler*, *supra*, 181 Cal.App.4th at p. 1159); it is not the only conduct upon which indirect contempt proceedings may be brought.

14

Sufficient notice is an essential component of due process under both the federal and state Constitutions. Due process considerations apply to an indirect contempt proceeding, which is criminal in nature. A basic principle of due process is that a defendant may not be convicted of an uncharged criminal offense (other than a lesser included offense, a concept inapplicable to contempt proceedings). (*People v. Lohbauer* (1981) 29 Cal.3d 364, 368-369.)

Notice that a contempt proceeding is pending does not open the floodgates to unlimited liability. As relevant here, due process requires "notice of the specific charges" at issue in the contempt trial. (*Little v. Kern County Superior Court* (9th Cir. 2002) 294 F.3d 1075, 1080-1081.)

Moore asserts his due process rights were violated because he was not provided with adequate notice of the four counts for which he was ultimately convicted. He argues the court improperly transformed this proceeding from one in which alleged violations of the court's September 2018 minute order (to prepare and file a settlement conference statement) and local rules (to participate in good faith and to prepare and file a settlement conference statement) were at issue, to one in which the court found fault with Moore's conduct more generally. We disagree.

The Zukerman declaration, which served as the affidavit or statement of facts (§ 1211, subd. (a)), specifically recited facts addressed to three of the categories of conduct for which Moore was convicted—yelling and interrupting, falsely accusing opposing counsel of lying without explanation, and refusing to engage in settlement discussions. The Zukerman declaration established that, in Zukerman's view, Moore was rude, aggressive, unprofessional, and acting in bad faith throughout the 15-minute settlement conference.

The order to show cause did not separately list these three categories of conduct using identical language. But the order to show cause included an allegation that

Moore had not participated in good faith at the settlement conference, which is another way of describing Moore's churlish refusal to engage in settlement discussions. The Zukerman declaration was attached to the order to show cause and was specifically referenced as the basis for the order to show cause. The affidavit and order to show cause put Moore on notice that he was facing a contempt conviction for his misconduct at the settlement conference.

The order to show cause might also have specified the applicability of section 1209, subdivisions (a)(1), (5), and (9) to the charge that Moore did not act in good faith at the conference. But, in our view, such citations were not categorically required to pass constitutional muster.

This conclusion is largely based on the fact that Moore admitted at the contempt trial his understanding of the conduct for which he was being held to account, and he conducted his defense in conformity with that awareness. Testifying in reference to his conduct at the settlement conference, Moore said: "I understand that conduct and that behavior is on trial here, whether it's in contempt or whether it's considered bad faith, and that's up for this court to make a determination, and I'm willing to accept that up and down, one way or the other." We find unconvincing Moore's current protestations that he would have conducted his defense differently had the charging documents been more artfully drawn.

That conclusion does not end our due process analysis, however. Moore was convicted of four counts of contempt. The fourth conviction was for "[b]locking the temporary judge from invoking the aid and authority of the supervising judge . . . by threatening the temporary judge that such action would unlawfully divulge confidential settlement discussion." That charge was not mentioned in the order to show cause. Nor was this conduct described in the declaration or testimony of Zukerman. The only mention of it came during the trial testimony of Parnall and Moore. Moore was therefore not on notice that he faced a separate contempt conviction for "blocking" Zukerman from

16

seeking assistance from the supervising judge. Prior to the drafting of the order to show cause, respondent court itself instructed Barsky's counsel that no conduct should be included in the contempt proceeding that was not mentioned in the Zukerman declaration. Moore's conviction on the fourth count of contempt violates his right to due process and therefore must be vacated.

Though a closer question, we also conclude Moore's due process rights were violated in convicting him of three separate, additional counts, rather than just one count. Alleged facts related to Moore's remaining three convictions were identified in the Zukerman declaration, which was attached to and referenced in the order to show cause. But neither the Zukerman declaration nor the order to show cause separated Moore's conduct into discrete "counts" in the manner of a criminal complaint. The order to show cause divided allegations against Moore into three categories, but two of the categories related to Moore's failure to file a mandatory settlement conference statement (conduct for which Moore was not found to be in contempt). The remaining category, Moore's failure to act in good faith at the settlement conference in conformity with the Superior Court of Orange County, Local Rules, rule 316(E), applies to the entirety of the misconduct described in the Zukerman declaration.

The order to show cause did not give Moore notice that he faced three distinct counts for acting in bad faith at the settlement conference. Under these circumstances, it violates due process to convict Moore of more than one count of contempt since Moore had inadequate notice that he faced four separate charges of contempt for his rude and unprofessional conduct during the 15-minute settlement conference.

*Advocacy Versus Contempt*

Moore next asserts that California law does not, as a substantive matter, support contempt convictions under the theories utilized by counts two and three.

17

Moore's substantial evidence argument concerning count four is related so we also consider that issue here.

"A judge has a duty to exercise the power [to punish for contempt] to protect the integrity of the court and the judicial process [citation], but he must do so 'with great caution, lest [he] stifle the freedom of thought and speech so necessary to a fair trial under our adversary system.'" (*DeGeorge v. Superior Court* (1974) 40 Cal.App.3d 305, 312.) "To avoid undue interference with an attorney's obligation vigorously to represent the interest of his client, counsel should not be held in contempt for disrespectful conduct unless the disrespect is objectively clear and not dependent upon the subjective impression of the judge." (*Id*. at p. 312.)

The contempt conviction in count two was based on Moore brazenly accusing opposing counsel Parnall of "lying" without identifying any lie. A lawyer's core function includes demonstrating through evidence and argument that an opponent's statements are inaccurate, incomplete, or misleading. That function is never properly discharged through name calling or by hurling insults. Interrupting an opponent's presentation to loudly proclaim that opponent is "lying" or is a "liar" undermines the legal process. This sort of tactic is inappropriate in a courtroom and is objectively disrespectful of our system of justice. (See *In re Buckley* (1973) 10 Cal.3d 237, 250-255 [statement that judge "obviously doesn't want to apply the law" was objectively contemptuous].) In a word, it is contemptuous.

The parties and their attorneys here had different points of view concerning what was ultimately more a legal than a factual dispute. The trustee and Moore viewed the formal structure of the family trust (which featured an as-yet unfunded sub-trust that would potentially benefit Ex in the future) to be inviolable, and that it created no obligation to a creditor of a contingent beneficiary. Barsky and Parnall, on the other hand, argued that the formalities in the trust structure did not prevent payment to a child

18

support creditor by a beneficiary of the trust, particularly one who had recently received a $100,000 "loan" from the trust.

A legal theory may be wrong, but proposing a legal theory in good faith is not a lie, and its proponent is not a liar. Rather than engaging in appropriate advocacy on behalf of his client, Moore was loud, rude, and obnoxious throughout the brief MSC, which undermined the ability of the settlement officer to proceed in a professional manner. Moore elected to act like a bully to further his client's interest. He attempts to justify this conduct as an appropriate adversarial "tactic." Moore is wrong. Such conduct has no place in any courtroom. It is contemptuous.

Count three punished Moore for refusing to participate in good faith settlement discussions. It must be said that parties cannot be forced to settle a case; they are entitled to stand their ground and go to trial to resolve their disputes. (*Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, 72; *Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1422.) Participation at a settlement conference in "good faith" does not require a party to put forward an offer to settle that is deemed to be reasonable by the settlement officer or the opposing party. Unfortunately, Moore's misconduct here involved much more than a failure to yield.

The obvious problem for Moore is the manner in which he refused to negotiate, e.g., loudly and obstreperously interrupting, treating the process with disrespect, laughing about the outcome afterward, and mentioning the death of opposing counsel using a tone that was perceived as threatening. Moore did not just refuse to consider the potential validity of Barsky's claim by considering the other side's perspective; he disrespected a temporary jurist and a judicial process established to promote justice and the efficient operation of the trial courts. This conduct was contemptuous.

Finally, as to count four, Moore was found to have blocked Zukerman from seeking the assistance of the supervising judge by advancing what was likely an incorrect

19

legal argument. "'[A] mere mistaken act by counsel cannot render him in contempt of court. Even if a legal proposition is untenable, counsel may properly urge it in good faith.'" (*Cooper v. Superior Court* (1961) 55 Cal.2d 291, 300.) To the extent the conduct underlying count four can legitimately support Moore's single contempt conviction, the offending behavior is once again the manner in which Moore's arguments were made.

*Lack of Adequate Warning that Moore's Conduct Could Result in Contempt*

Moore next argues that any contempt conviction is improper because he was not warned by Zukerman at the time of the proceeding that his conduct could be punished by contempt. Again, we disagree.

Moore, as a member of the California bar, was on notice that his conduct at an official proceeding could subject him to contempt charges. Section 1209 and the Orange County Superior Court Local Rules were available to Moore, as they are to all attorneys, prior to the hearing. (See also Bus. & Prof. Code, § 6068, subd. (b) [it is a duty of a California attorney "[t]o maintain the respect due to the courts of justice and judicial officers"].)

Moore contends he was not warned at the settlement conference that his tone of voice could subject him to contempt charges if it continued. "When an order of contempt is based on the tone of voice used by the alleged contemner, the order must recite that he was warned his tone of voice was objectionable. Section 1211, subdivision (a), does not expressly require the order to recite such a warning, but that is the lesson correctly drawn from our cases by the authors of the California Judges Benchbook: 'Unless the conduct is outrageous and immediately recognizable as an act of contempt, the judge should warn the person that further conduct will result in a citation for contempt. Such a warning should be made on the record, and any contempt order

20

should indicate that a warning was given.'" (*Boysaw v. Superior Court* (2000) 23 Cal.4th 215, 222 (*Boysaw*) [overturning order in direct contempt case].)

*Boysaw* was a case in which defense counsel overzealously cross-examined a police officer, then argued too vigorously with the judge in front of the jury when he was admonished. (*Boysaw*, *supra*, 23 Cal.4th at pp. 222-223.) Counsel, in the heat of the moment, addressed the court in a rude, hostile, and disruptive tone. (*Id*. at p. 222.) The Supreme Court was unwilling to affirm a contempt conviction based solely on tone without an adequate warning, but emphasized that "had the trial court rested its finding of contempt upon petitioner's direct refusal to obey the court's order not to continue arguing its evidentiary ruling, or upon the rude, hostile, and disrespectful *content* of [counsel's] response . . . , such a finding would have supported an order of contempt." (*Id*. at p. 223.)

Unlike the spontaneous outburst in *Boysaw*, here the evidence demonstrates that Moore was yelling, accusing opposing counsel of lying, and repeatedly interrupting the court and counsel throughout the 15-minute conference. His conduct undermined the entire settlement proceeding. It is also apparent this was not a case of an attorney momentarily getting carried away while defending a client's liberty at trial. Instead, Moore admits he deliberately employed these offensive "tactics" during this settlement conference. Though he was not specifically warned to desist upon pain of contempt proceedings, both Zukerman and Parnall requested that Moore cease his behavior and extended every opportunity to move past Moore's misconduct. Moore's behavior continued unabated.

Moore demonstrated a total lack of respect for the court, the settlement officer, opposing counsel, and the opposing party. This was contemptuous. Moore raised the prospect of opposing counsel's death in a manner that upset counsel's client. Moore laughed with his client and associate after the utter failure of the settlement

21

conference.  No explicit contempt warning was required to punish Moore for a single count of indirect contempt under the circumstances of this case.

*Unit of Prosecution and Section 654*

Courts have previously observed that Penal Code section 654 applies to civil contempt prosecutions.  (E.g., *Koehler*, *supra*, 181 Cal.App.4th at p. 1170.)  We therefore requested the parties to address the impact, if any, of that section on this case.

Upon closer analysis, the question presented here is not so much a traditional section 654 issue (i.e., whether multiple punishments are appropriate under different statutes for the same conduct); rather, it is a "unit of prosecution" problem.  (See *People v. Wilson* (2015) 234 Cal.App.4th 193, 199 [analyzing whether multiple "criminal threats" convictions under a single criminal statute were justified for threats issued during one encounter between the victim and defendant].)  Penal Code "[s]ection 954 generally permits multiple conviction[s for the same act or course of conduct].  Section 654 is its counterpart concerning punishment.  It prohibits multiple punishment for the same 'act or omission.'"  (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

We must determine what the appropriate "unit of prosecution" is for Moore's conduct during the 15-minute settlement conference.  "Where separate contemptuous acts are committed, the contemner can be fined for each offense . . . ."  (*Donovan v. Superior Court* (1952) 39 Cal.2d 848, 855 (*Donovan*).)  The "'crucial question' in determining whether separate adjudications of contempt are proper is whether these separate adjudications 'were based upon separate insults to the authority of the court, not whether the insults happened to occur on the same or different days.'"  (*Conn v. Superior Court* (1987) 196 Cal.App.3d 774, 787 (*Conn*).)

We look for guidance for the application of this rule to other contempt cases.  It has been found appropriate to punish proprietors of pornographic materials for multiple violations of an injunction against maintaining a premises as a nuisance when

22

each violation is discrete and separated in time from prior violations. (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1248 [one contempt punishment per day that the site was a nuisance in violation of the injunction].)  It has also been found appropriate to punish a homeowner for distinct violations of a permanent injunction to maintain the home as a single family residence, remove illegal apartments, and reconnect separated portions of the structure.  (*Donovan*, *supra*, 39 Cal.2d at pp. 850-851, 854-855 [one count for each lease of an apartment, one count for failing to remove the apartment structures, and one count for failing to reconnect segments of the residence].)

On the other hand, a witness cannot be punished for multiple counts of contempt based on a refusal to answer a series of related questions at a single hearing. (*In re Keller* (1975) 49 Cal.App.3d 663, 667-669.)  Nor may a court punish a party with 38 separate counts of contempt for refusing to abide by an order to return documents for 38 straight days.  (*Conn*, *supra*, 196 Cal.App.3d at p. 777; *id*. at p. 788 [reversing with instructions to modify order to reflect only one contempt conviction per party].) Similarly, it is improper to use contempt to punish an attorney three times for a continued failure to pay a single discovery sanction.  (*Koehler*, *supra*, 181 Cal.App.4th at pp. 1169-1170.)

We find the circumstances here to be more similar to the latter series of cases than the former.  The proper "unit of prosecution" for Moore's conduct at the settlement conference therefore must be a single count of contempt.  His was a continuous insult to the dignity and process of the court that continued throughout the 15-minute course of the settlement conference.  It was the totality of Moore's misconduct that undermined the conference and supports a finding of contempt.  Even if the Zukerman affidavit and/or the order to show cause had separated Moore's alleged conduct into four counts and thereby provided adequate notice of the charges, we would conclude that Moore's conduct justifies only one contempt conviction under this analysis.

*Sufficiency of the Evidence*

"Because of the penalties imposed, a proceeding to punish an accused for contempt is criminal in nature, and guilt must be established beyond a reasonable doubt." (*In re Coleman* (1974) 12 Cal.3d 568, 572.) Despite the heightened burden of proof and stricter appellate review of contempt proceedings, "[t]he power to weigh evidence . . . rests exclusively with the trial court. [Citations.] Accordingly, it is well settled that our responsibility upon review is merely to ascertain whether there existed any substantial evidence to sustain the jurisdiction of the trial court." (*Ibid*.)

Moore raises a substantial evidence challenge to counts three and four. Our analysis above, which eliminates all but a single conviction, moots this issue. Evidence supporting count one (yelling and obstreperousness), count two (accusing opposing counsel of lying without explanation), count three (refusing to engage in good faith settlement proceedings), and count four ("blocking" Zukerman from seeking the help of a judicial officer) are properly considered together to establish the sufficiency of the evidence to support a single contempt conviction for Moore's bad faith conduct at the settlement conference.

*Award of Attorney Fees and Costs*

Finally, the petition asserts the contempt order wrongly awarded attorney fees and costs in connection with the contempt proceeding to Barsky.

"California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." (*Trope v. Katz* (1995) 11 Cal.4th 274, 278.) But "[a] prevailing party is entitled to attorney fees when authorized by statute or contract." (*Bear Creek Planning Committee v. Ferwerda* (2011) 193 Cal.App.4th 1178, 1185; see also *Sino Century Development Limited v. Farley* (2012) 211 Cal.App.4th 688, 694 ["Attorney fees cannot be imposed as a monetary sanction for attorney misconduct without specific statutory authorization"].)

Respondent court awarded attorney fees and costs pursuant to section 1218, subdivision (a): "Upon the answer and evidence taken, the court . . . shall determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he or she is guilty of the contempt, a fine may be imposed on him or her not exceeding one thousand dollars ($1,000), payable to the court . . . . In addition, a *person who is subject to a court order* as a party to the action, or any agent of this person, *who is adjudged guilty of contempt for violating that court order may be ordered to pay* to the party initiating the contempt proceeding the *reasonable attorney's fees and costs* incurred by this party in connection with the contempt proceeding." (§ 1218, subd. (a), italics added.)

The contempt convictions at issue were not based on Moore's violation of a court order. They were based on Moore's abusive and unprofessional conduct during the MSC. The only court order mentioned in the contempt proceedings was one requiring the preparation of a mandatory settlement conference statement, but Moore was not held in contempt for the failure to comply with that order.

So this is the issue: can a court award attorney fees and costs under section 1218, subdivision (a), when the contempt at issue is not for violating a court order? We conclude the answer to that question is no.

"'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider

25

other aids, such as the statute's purpose, legislative history, and public policy.""" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

The plain language of the statute appears to preclude the award of attorney fees here. As we have discussed, not all contempt cases are brought based upon the violation of a court order; only those cases which relate to a court order can result in an attorney fee award under section 1218, subdivision (a).

"The purpose of the statute involved here, section 1218, is to encourage parties to enforce contempt violations and to encourage parties to comply with court orders." (*Rickley v. Goodfriend* (2012) 207 Cal.App.4th 1528, 1537.) Often, violations of court orders will occur outside the immediate presence of the court, requiring indirect contempt proceedings to be prosecuted by opposing counsel. The Legislature reasonably concluded it would be unfair to impose the costs of enforcing court orders on the beneficiary of the order, rather than the recalcitrant violator of the order.

Other forms of contempt (like those at issue here) generally occur within the presence of the court, leading to direct contempt proceedings. The fact that the prototypical model is not applicable in this case does not allow us to ignore the language of the statute. We observe in closing that this holding has no effect on the probate proceeding, in which the court also awarded attorney fees and costs to Barsky under other legal authority.

**DISPOSITION**

The contempt order is invalid and annulled with regard to three counts and three $900 fines, as well as the award of attorney fees and costs. The four counts of contempt are consolidated and reduced to a single count for Moore's bad faith participation and obstreperous misconduct at the settlement conference. This single count of contempt and accompanying $900 fine is sustained. Upon finality of this

opinion, we also direct the clerk of this court to provide a copy of this opinion to the State Bar.  (Bus. & Prof. Code, § 6086.7, subd. (a)(1).)

In the interests of justice, the parties shall bear their own costs incurred in this proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)  Though Moore's petition is largely successful, that success should in no way be construed as an endorsement by this court of his behavior.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.